UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

MAHSA RAHMANI NOBLE,

               Plaintiff,

           v.

JACQUELINE VAROLI GRACE a/k/a LTM BOOKS,
INC. and LTM BOOKS, LLC a/k/a LTM BOOKS, INC.

               Defendants.

------------------------------------------------------------------ x

Case No. 1:13-cv-00610-SAS

JURY TRIAL DEMANDED

## AMENDED COMPLAINT

Plaintiff, Mahsa Rahmani Noble (***"Plaintiff"***), by her attorneys, files this Amended

Complaint against Jacqueline Varoli Grace a/k/a LTM Books, Inc. (***"Grace"***) and LTM Books,

LLC a/k/a LTM Books, Inc. (***"LTM Books, LLC"*** and, together with Grace, ***"Defendants"***) and

states:

## INTRODUCTION

1.    In January 2010, Defendants fraudulently induced Plaintiff to enter into a

publishing contract by falsely and repeatedly misrepresenting the nature of Defendants' business,

experience and capabilities as a publisher. As recently learned, Defendants have never published

a single significant book and her prior and repeated representations to the contrary were false and

misleading. Defendants are nothing more than a failed literary agent and book packager.

Defendants have repeatedly sought to dupe and ensnare promising and naive new authors with

the false promise that upon completion of the subject manuscript, Defendants will publish it.

Those false promises not only have created tragic disappointment and frustration on the part of

the Plaintiff, and other victimized authors, but have had the direct effect of damaging or

eliminating promising new careers before they can even start. Defendants no longer even

maintain an active agency and packaging operation, but continue to falsely hold themselves out

84702950

as operating a legitimate publishing business (with a physical location that was long ago abandoned), while seeking to ensnare future victims.

2.      Plaintiff seeks a judgment (i) determining that the publishing contract is void *ab initio* and (ii) awarding full damages for Defendants' fraudulent conduct.  In the alternative, Plaintiff seeks a judgment (i) determining and declaring that (a) the publishing contract is of no force and effect pursuant to its terms, (b) the publishing contract was expressly and effectively terminated by Defendants, (c) the publishing contract, and alternatively any agency relationship, were expressly and effectively terminated by Plaintiff, (d) Defendants breached her fiduciary duties to Plaintiff and (e) Defendants tortiously interfered with Plaintiff's economic relationships and (ii) awarding full damages for Defendants' wrongful conduct.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over all claims pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391, as Defendants are residents of the State of New York and a substantial part of the events or omissions giving rise to the claims raised herein occurred within the State, City and County of New York.

## PARTIES

5.      Mahsa Rahmani Noble is an individual residing in Boston, Massachusetts.

6.      Jacqueline Varoli Grace is an individual residing in Rye, New York.

7.      LTM Books, Inc. is an imaginary corporation that does not currently exist, and never did exist.  Grace falsely represented that this imaginary corporation had offices previously

2

located at 352 Seventh Avenue, New York, New York 10001. It currently has no office location, either real or imagined, and Grace has abandoned her prior leasehold at the forgoing location.

8.    LTM Books, LLC is a New York limited liability company with an office listed with the New York State Department of State Division of Corporations as 352 Seventh Avenue, 7th Floor, New York, New York 10001. Upon information and belief, LTM Books, LLC no longer operates out of this address. However, the New York State Department of State has designated Grace as the entity on whom to serve process. Upon information and belief, Grace is the managing member of LTM Books, LLC.

## FACTUAL BACKGROUND

9.    Plaintiff realleges each of the foregoing paragraphs is if fully restated herein.

10.    In September 2008, Plaintiff began writing a nonfiction movie script about the life of Soraya Bakhtiari, a distant cousin of Plaintiff and the second wife of the late Shah of Iran (the *"Soraya Movie Script"*). Plaintiff has not published any prior scripts (movies) or manuscripts (books).

11.    On or about October 22, 2008, Plaintiff at significant personal expense traveled to Villa de Este for ten days to research and prepare the Soraya Movie Script.

12.    On or about December 5, 2008, Plaintiff at significant personal expense traveled to Bermuda for one week to research and prepare the Soraya Movie Script.

13.    In January 2010, Plaintiff met Grace and discussed Plaintiff's preparation of the Soraya Movie Script. During those meetings, and at subsequent meetings and discussions during the following four months, Grace (a) sought to form a close personal relationship with Plaintiff, (b) sought to induce Plaintiff to enter into an agreement pursuant to which Plaintiff would prepare and Defendants would publish a nonfiction manuscript relating to the true life story of

3

84702950

Soraya Bakhtiari and (c) falsely and repeatedly misrepresented that Defendants operated a successful publishing business and had significant experience and capabilities as a book publisher.

14.     Defendants have never published a single significant book and Grace's prior and repeated representations with respect to her business, experience and capabilities were false and misleading.

15.     On or about January 12, 2010, Defendants transmitted to Plaintiff a publication contract which Defendants represented was a standard publication contract that Plaintiff would need to sign so that Defendants could publish the previously discussed manuscript.

16.     On May 10, 2010, after approximately four months of discussions and false promises, Plaintiff relented and agreed to sign, and did sign and return, the previously delivered publication contract.

17.     On or about February 10, 2010, Plaintiff traveled at significant personal expense to Los Angeles for several days to research and prepare the Soraya Movie Script and book manuscript.

18.     On or about May 14, 2010, Plaintiff traveled at significant personal expense to Switzerland for several days to research and prepare the Soraya Movie Script and book manuscript.

19.     On or about July 2010, Plaintiff traveled at significant personal expense to Italy for ten days to research and prepare the Soraya Movie Script and book manuscript.

20.     On or about August 3, 2010, Plaintiff delivered the initial manuscript to Defendants for acceptance and publication.

21.   On or about September 2, 1010, Defendants provided vague feedback on the initial manuscript and suggested that Plaintiff hire, at significant personal expense, an assistant writer.

22.   On or about September 9, 2010, Grace admitted to violating her prior confidentiality agreement with Plaintiff by sharing a draft of the manuscript with her then current husband. Grace has since divorced said husband. It is uncertain whether the draft manuscript was returned to Defendants, or shared by Grace's prior husband with other persons in violation of Defendants' confidentiality obligations.

23.   On or about October 6, 2010, Plaintiff filed at significant personal expense the draft manuscript with the United States Copyright Office to obtain copyright protection.

24.   On or October 20, 2010, due to further business failure and resulting financial distress, Defendants moved their office location from 352 Seventh Avenue, New York, New York 10001 to a less prestigious address. Defendants continue to falsely list its prior address as its current address on its website and other marketing materials. Subsequently, Defendants abandoned the second location due to a complete business failure and, upon information and belief, have no current office location.

25.   On or about October 22, 2010, Plaintiff sent an Initial Notice of Termination to Defendants with respect to the alleged publishing contract. This notice terminated said alleged contract based on, *inter alia*, the following breaches by Defendants:

> Duty of Cooperation – Despite numerous and repeated requests, the Publisher has failed, and continues to fail, to meet and discuss with the Author, along with her lawyer and manager, the Work and necessary and appropriate next steps for a timely and successful publication of the Work.

> Duty of Confidentially – Upon information and belief, including direct statements from Ms. Grace, the Publisher has failed to maintain and safeguard the confidentiality of the Work and has, without obtaining execution of prior confidentiality and non-disclosure

agreements, discussed the Work and provided copies of same to potential movie producers and personal friends and acquaintances. Moreover, the Publisher has taken said actions while failing to copyright the Work as expressly required under the Agreement.

Promised Support – The Publisher has failed to provide certain promised support to the Author, including support during the initial writing process and anticipated marketing support (absent the Author obtaining purchaser commitments with respect to the Work).

26.    The notice further advised Defendants that they were directed immediately (a) to return or destroy any copies in her possession or control of the draft manuscript and (b) to cease and desist with respect to any third-party communications with respect to or in any way relating to the work

27.    Subsequently, Grace pleaded with and attempted to coerce Plaintiff seeking to allow Defendants to publish any subsequently revised manuscript.

28.    On or about June 20, 2011, Plaintiff hired at significant personal expense an assistant writer.

29.    On or about October 17, 2011, Plaintiff filed at significant personal expense the revised draft manuscript with the United States Copyright Office to obtain copyright protection.

30.    On or about November 22, 2011, Plaintiff delivered a revised manuscript with prologue to Defendants for review and feedback.

31.    On or about January 22, 2012, Plaintiff delivered a final manuscript to Defendants for review and feedback.

32.    On or about February 2, 2012, Plaintiff filed at significant personal expense the final manuscript with the United States Copyright Office to obtain copyright protection.

33.    On or about February 3, 2012, Plaintiff received a telephone call from Grace in which Grace indicated Defendants wanted to pursue partnering with a larger publication house regarding the final manuscript.

6

34.    On or about February 20, 2012, Grace sent an email to Plaintiff confirming a

publishing partner and requesting a conference call to discuss pursuing same.

35.    On or about February 29, 2012, Plaintiff provided a revised final manuscript to

Defendants for review and feedback by the alleged publishing partner.

36.    On or about March 20, 2012, Defendants provided certain cleaned-up edits on the

revised final manuscript.

37.    On or about May 30, 2012, Defendants acknowledged their inability to publish

the manuscript and stated their intention to cease providing any further publishing "help" or

assistance.

38.    On or about June 20, 2012, Plaintiff sent a Second Notice of Termination to

Defendants.  This notice terminated said alleged contract based on, *inter alia*, the following:

> The May 30, 2012 email (and certain other email, discussions and conduct) wherein you
> indicated (i) your inability to "help" with respect to publication as set forth in the
> Agreement and (ii) desire for severance with respect to the Agreement.  This action is
> also being taken in response to your (i) subsequent unwillingness to sign or discuss the
> proposed severance agreement that was sent to you on June 6, 2012 and (ii) demand to
> manage and direct a self-publication effort by the Author with respect to publication of
> the Work.
>
> Please be further advised that the foregoing action is also being taken in response to other
> actual and anticipatory breaches of the Agreement by the Publisher, including those set
> forth in that certain Notice of Termination, dated October 22, 2010, which notice was
> subsequently retracted by the Author based on promises of cure that the Publisher failed
> to provide.

39.    Based on their personal relationship, Plaintiff subsequently engaged in

discussions with Grace seeking an amicable resolution of these matters.  Defendants have

refused to resolve these matters amicably and has instead sought to coerce Plaintiff to pay money

based on threats to allege the nominal existence of an enforceable contract which would preclude

Plaintiff from moving forward with either her script or manuscript.

7

40.     Plaintiff now seeks the protection of, and justice from, this Court with respect to the improper, fraudulent and coercive threats of Defendants.

## COUNT I
### (FRAUD IN THE INDUCEMENT)

41.     Plaintiff realleges each of the foregoing paragraphs is if fully restated herein.

42.     Defendants fraudulently induced Plaintiff to enter into a publishing contract by falsely and repeatedly misrepresenting the nature of Defendants' business, experience and capabilities as a publisher.

43.     Plaintiff relied on these false and misleading misrepresentations in entering into the alleged publishing contract.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor and against Defendants (i) determining and declaring that the publishing contract is void *ab initio* and (ii) awarding compensatory and punitive damages of at least $75,000 and the costs of this suit, including reasonable legal fees and judgment interest.

## COUNT II
### (PUBLISHING CONTRACT OF NO FORCE AND EFFECT)

44.     Plaintiff realleges each of the foregoing paragraphs is if fully restated herein.

45.     The alleged publishing contract is between Plaintiff and LTM Books, Inc.

46.     LTM Books, Inc. does not and never did exist as a legal entity with the capacity to enter into legal contracts.

47.     The alleged publishing contract is dated January 12, 2010.

48.     The alleged publishing contract states:

EFFECTIVENESS OF AGREEMENT:  This Agreement shall be of no force and effect unless signed by Author and the Publisher within 90 days of the date first written above. ¶ 34.

8

49.     The alleged contract was not signed by Author and Publisher within 90 days of the contract date, and was instead signed by the "Author" 112 days after the date first written above and signed by the "Publisher" 118 days after the date first written above.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor and against Defendants (i) determining and declaring that (a) the publishing contract is of no force and effect on its face and pursuant to its terms and (ii) awarding compensatory and punitive damages of at least $75,000 and the costs of this suit, including reasonable legal fees and judgment interest.

## COUNT III
### (PUBLISHING CONTRACT TERMINATED BY DEFENDANTS)

50.     Plaintiff realleges each of the foregoing paragraphs is if fully restated herein.

51.     On or about May 30, 2012, Defendants (a) acknowledged her inability to publish the manuscript and stated her intention to cease providing any further publishing "help" or assistance and (b) expressly and effectively terminated the alleged publishing contract.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor and against Defendants (i) determining and declaring that (a) the publishing contract was expressly and effectively terminated by Defendants and (ii) awarding compensatory and punitive damages of at least $75,000 and the costs of this suit, including reasonable legal fees and judgment interest.

## COUNT IV
### (CONTRACT OR AGENCY TERMINTED BY PLAINTIFF)

52.     Plaintiff realleges each of the foregoing paragraphs is if fully restated herein.

53.     On or about October 22, 2010, Plaintiff sent an Initial Notice of Termination to Defendants with respect to the alleged publishing contract.  This notice terminated said alleged contract based on various breaches by Defendants.

84702950

54.     On or about June 22, 2011, Plaintiff sent an Second Notice of Termination to Defendants with respect to the alleged publishing contract.  This notice terminated said alleged contract based on wrongful conduct by Defendants.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor and against Defendants (i) determining and declaring that (a) the publishing contract, and alternatively any agency relationship, were expressly and effectively terminated by Plaintiff and (ii) awarding compensatory and punitive damages of at least $75,000 and the costs of this suit, including reasonable legal fees and judgment interest.

## COUNT V
### (BREACH OF FIDUCIARY DUTIES)

55.     Plaintiff realleges each of the foregoing paragraphs is if fully restated herein.

56.     As a result of their agency and personal relationship, Defendants owed fiduciary duties to Plaintiff, including duties of loyalty, trust and fair dealing.

57.     Defendants breached said duties based on, *inter alia*, their continuing false and misleading statements and related bad acts.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor and against Defendants (i) determining and declaring that (a) Defendants breached their fiduciary duties to Plaintiff and (ii) awarding compensatory and punitive damages of at least $75,000 and the costs of this suit, including reasonable legal fees and judgment interest.

## COUNT VI
### (TORTIOUS INTERFERENCE)

58.     Plaintiff realleges each of the foregoing paragraphs is if fully restated herein.

10

84702950

59.     Plaintiff had a reasonable and justified expectation of developing economic interests and relationships with respect to the above-discussed script and manuscript.

60.     Defendants recklessly and intentionally interfered with those reasonable economic expectations.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor and against Defendants (i) determining and declaring that (a) Defendants tortiously interfered with Plaintiff's economic relationships and (ii) awarding compensatory and punitive damages of at least $75,000 and the costs of this suit, including reasonable legal fees and judgment interest.

Dated: February 25, 2013

MAHSA RAHMANI NOBLE

By: _____
One of Her Attorneys

Kenneth E. Noble (KEN-4842)
Bertrand J. Choe (BC-7997)
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022
Tel: (212) 940-6419
Fax: (212) 894-5653

11

84702950

## CERTIFICATE OF SERVICE

I, Bertrand J. Choe, duly admitted to practice before this Court, certify that on February 26, 2013, I caused a true copy of the *Amended Complaint* to be served on the defendant below as indicated:

**By U.S. Postal Regular Mail**

Jacqueline Varoli Grace
92 Central Avenue
Rye, New York 10580

and

Jacqueline Varoli Grace
P.O. Box 706
Rye, New York 10580

Bertrand J. Choe

12