1    D5E0NOBC                      Conference

2    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
3    ------------------------------x

4    MAHSA RAHMANI NOBLE,

5                   Plaintiff,

6              v.                              13 CV 00610

7    JACQUELINE VARLOI GRACE, LTM
     BOOKS, LLC,
8
                    Defendant.
9
     ------------------------------x
10                                        New York, N.Y.
                                          May 14, 2013
11                                        9:30 A.M.

12   Before:

13                     HON. ANDREW J. PECK,

14                                       Magistrate Judge

15                        APPEARANCES

16   KATTEN MUCHIN ROSENMAN,LLP
          Attorneys for Plaintiff Noble
17   BY:   KENNETH ERIC NOBLE    LINKER

18   SANDRA MISSAKIANN (via telephone)
          Attorney for Plaintiff Noble
19

20

21   JACQUELINE VAROLI GRACE
          Pro Se Defendant
22

23

24

25

```
 1                 (Case called; in open court)
 2                 THE COURT:  Be seated.
 3                 ALL:  Good morning, Judge.
 4                 THE COURT:  All right.  Let me note for the record
 5       that Mr. Linker, who is here, is somebody I taught with at xxx
 6       Cardozzo, for 10 years.
 7                 MR. LINKER:  Approximately.
 8                 THE COURT:  Approximately 10 years.  I'm not sure
 9       whether anyone thinks that's a conflict, but in any event, you
10       know, the Court is doing this as a favor to the parties.
11                 The Court has no jurisdiction.  The case is closed and
12       dismissed.  But, as I said in my endorsement, I'm willing to
13       help you try to hash out the settlement agreement.
14                 Anyone have anything to say about Mr. Linker's
15       presence?
16                 MS. GRACE:  I don't know why he is here, but I'll
17       trust that it is acceptable.  I think it is a conflict, but if
18       we can get through this and stop wasting everyone's time, that
19       would be fantastic.
20                 THE COURT:  All right.
21                 Mr. Noble, anything you want to say in that regard?
22                 MR. NOBLE:  No, I'm happy -- I invited Mr. Linker.
23       I'm happy he is here.  I think he will be able to help us
24       facilitate the resolution.
25                 THE COURT:  Could the attorney who is on the phone
```

1  please state her name.

2           THE DEPUTY CLERK:  Sandra Missakiann.

3           THE COURT:  And from what firm are you?

4           THE DEPUTY CLERK:  My own firm.

5           THE COURT:  All right.  Okay, so I have got umpteen

6  markup agreements of the draft.  Could somebody tell me which

7  version seems to be the most recent, and maybe hand it up?

8           MS. GRACE:  There are two versions, your Honor.  There

9  is a version that the Nobles had sent to me that I had marked

10 up, sent back, and all of the changes that I requested were

11 rejected and an additional, two additional, paragraphs were

12 then added to that draft.

13          MR. NOBLE:  Your Honor, we can hand up the most

14 recent.

15          MS. GRACE:  And then, second to that, I must -- and I

16 had a change.  I suggested we use an agreement that a former

17 client of mine had her attorney draft that we executed and it

18 has been successful for several years.  And I sent that to

19 Mahsa and, unfortunately, that was rejected.

20          So there are two versions, is the short version.

21          THE COURT:  All right.  Mr. Noble.

22          MR. NOBLE:  I'm delighted to hand up the latest

23 version, your Honor.

24          THE COURT:  All right.  And let's see if we can

25 quickly cut through this.  This, frankly, is one of the reasons

 1    I thought you didn't need anything other than the transcript.

 2            All right.  Who's the blue, and who is the red on this

 3    version?

 4            MR. NOBLE:  The blue represents the additions that

 5    Noble has offered.  The red represents strike-outs from the

 6    last draft received from Ms. Graves.

 7            THE COURT:  Okay.  So let's just do it paragraph by

 8    paragraph.

 9            Frankly, you know, I'm doing this on the record, and

10    we're just gonna go through it.  You'll each tell me what you

11    want, or don't want in a particular paragraph, where there is a

12    dispute, I'll tell you my thoughts, and you'll accept them or

13    you won't.

14            MR. NOBLE:  Thank you, your Honor.

15            There are two points in paragraph 2, I would point

16    out.  The first one is, instead of two calendar dates, we have

17    asked -- and the first point is not a big deal, we can get the

18    check out within two days, or three business days, assuming it

19    is not a Friday.

20            THE COURT:  What's your pleasure, Ms. Grace?

21            MS. GRACE:  The timing is fine.

22            THE COURT:  All right.  So three business days it is.

23            MR. LINKER:  The second point, Judge, was a little bit

24    of a bigger point to us.  We not only have a contract that we

25    have entered into with LTM Books --

1          THE COURT:  But you have a settlement with Ms. Grace.

2          MR. NOBLE:  Well, LTM Books -- we have a settlement

3    with both, your Honor.

4          THE COURT:  I understand.  She wants the check sent to

5    her.  Why do you care?

6          MR. NOBLE:  The reason I care, is because LTM Books

7    has various stakeholders.  They have creditors and equity

8    holders.  I don't want to get in the middle of some kind of

9    fraudulent transfer, any kind of impropriety allegation because

10   I'm trying to divert money around the corporation.  That is not

11   what I have signed up for.

12         MS. GRACE:  Excuse me, your Honor.

13         He has no information about LTM Books.  That is

14   inaccurate.  And he is making stuff up.

15         So he sued me personally.  I want the check made out

16   to me, personally.  I don't see the problem with it.

17         MS. NOBLE:  Can I just say something here?  The reason

18   this has come up is because Ms. Grace, two years ago, asked me

19   to offer her help from somebody that can invest in her company

20   because, financially, her company was going under.

21         MS. GRACE:  Absolutely not.

22         MS. NOBLE:  We don't know whether there are creditors

23   or not.  This is based on that information.

24         MS. GRACE:  That's inaccurate, your Honor.  And these

25   are two different companies.

```
 1            MS.  NOBLE:  No, it's not.
 2            THE COURT:  Okay.  All right, we have got two
 3  different LTM Books in the caption.
 4            MS. GRACE:  Your Honor, I cannot accept a check for
 5  LTM Books, it has to be made payable to me.
 6            THE COURT:  Okay, what are the --
 7            MR. NOBLE:  Is there a reason?
 8            THE COURT:  What do the transcripts say, does anybody
 9  remember?
10            MR. NOBLE:  The transcript said that this is being
11  settled on behalf of --
12            THE COURT:  Not on who it was on behalf of, who is the
13  money being given to.
14            MR. NOBLE:  Did not say.
15            MS. GRACE:  It -- to me.
16            MR. NOBLE:  The transcript didn't say that, you may
17  have said that.
18            THE COURT:  Okay, somebody want to help me.  Where is
19  the dollar amount in the transcript?
20            MR. NOBLE:  If I look on page 2, lines 20 and 21 are
21  the first references.  It says 10,000 to Ms. Grace.
22            THE COURT:  To Ms. Grace, a/k/a LTM Books, write the
23  check that way.
24            MR. NOBLE:  Okay.
25            THE COURT:  Okay?
```

1          MS. GRACE:  What does that mean?  Can I deposit it

2     into an account that is in my name?

3          THE COURT:  It's in your name, you can do whatever you

4     can legally do.

5          MS. GRACE:  That's important.  Thank you.

6          MR. NOBLE:  Your Honor, is it necessary -- well, would

7     the plaintiff like two checks, or one check?

8          MS. GRACE:  Two please.  Thank you.

9          MR. NOBLE:  Okay.

10          THE COURT:  Okay.  So that paragraph is taken care of.

11          MR. NOBLE:  Thank you, your Honor.

12          On paragraph 3, there are two points there.

13          The first point she has asked that it be without a any

14     warranty, except as specified in Section 6, that's okay with

15     us.

16          THE COURT:  Okay.

17          MR. NOBLE:  All right.

18          THE COURT:  And the extra sentence --

19          MR. NOBLE:  The extra sentence says -- it's a

20     reaffirmation that Ms. Grace --

21          THE COURT:  Called gilding the lily 12 times over.

22          Any objections to the sentence?

23          MS. GRACE:  Yes, I object to it.

24          THE COURT:  Okay, why?

25          MS. GRACE:  I think it's overreaching.  I think the

1    entire contract states that they granted rights, they are

2    getting the rights back, and we made an agreement --

3         THE COURT:  Are you going to claim any rights to the

4    property?  This is saying -- look, it may be over lawyering,

5    but why fight about something that says it for the third time

6    in the sixth different way, if it says it the same everywhere

7    else.  You're not going to claim ownership, control, or

8    authority over any rights in the work, right?

9         MS. GRACE:  I'm not going to claim any rights, but I

10    want to be clear that I can only revert back to the Nobles, the

11    rights that were given.  And I think this actually goes beyond.

12         THE COURT:  No, it says you're not going to claim

13    anything.  Doesn't say you are giving them anything.  The prior

14    sentence has the without "warranty."  This is saying you will

15    not make any claim for whatever reason.  Doesn't say that you

16    have any rights to give them, or anything else.  It just says

17    you won't say you have got any rights in the property, which

18    you have agreed to.

19         MS. GRACE:  If we change the word "or" to "per the

20    publishing agreement," I'm in agreement with it.

21         MR. LINKER:  If I may just add, if she had any claim,

22    it would have been a compulsory counterclaim.  And she settled

23    the suit, so I think she really -- the substance should be

24    acknowledging that.

25         THE COURT:  What is the publishing agreement.  Is that

```
 1    a defined term here somewhere?

 2              MR. NOBLE:  It's in the first whereas clause.  It is

 3    the contract that was nominally signed.

 4              THE COURT:  Yeah, well, that's one of the problems.

 5    That's the publication agreement.

 6              MR. NOBLE:  Correct.

 7              THE COURT:  This added language, why don't you end the

 8    word after "work."  End that sentence after "work," and I think

 9    everybody will be happy.

10              MR. NOBLE:  Your Honor --

11              MS. MISSAKIAM:  Your Honor, may I add something with

12    respect to the publishing agreement, and the reason why certain

13    things have to be included in the settlement agreement that may

14    appear to be additional language.

15              There is certain rights that were granted under the

16    publishing agreement that are a little bit beyond what normally

17    would be put into a publishing agreement.  And it allows the

18    publisher --

19              THE COURT:  I'm sorry, I'm going to interrupt you

20    because, now, I have read what is there in this extra sentence

21    that isn't already contained in the first sentence of

22    paragraph 3.  I mean, really?  The redundancy --

23              MR. NOBLE:  Your Honor, I think that she is giving us

24    everything she has.  And I think the first sentence does that.

25    We would like an affirmation that is clear to a layperson that
```

 1    she is not going to claim a work --

 2              THE COURT:  This isn't clear to a layperson.

 3              MR. NOBLE:  The last sentence I think is pretty clear.

 4    She's not going to claim anything on the work under the

 5    publishing agreement.

 6              THE COURT:  She won't agree.  It is already in the

 7    prior sentence.  It is redundant.  Eliminate it.  Or you are

 8    going to fight to the Court of Appeals as to whether the case

 9    can be reopened.  I don't know what to tell you.

10              MS. NOBLE:  Your Honor --

11              THE COURT:  No.  It's redundant.

12              MR. NOBLE:  Just one last point, your Honor.

13         I think what Ms. Grace is looking for from this Court

14    is guidance in terms of whether the language is overreaching,

15    inappropriate, or reasonable.

16              THE COURT:  It is redundant.  Therefore, it is not

17    reasonable.

18         So I think Ms. Grace is willing to leave this

19    redundant sentence in, if it stops after the word "work."  If

20    it doesn't --

21              MS. GRACE:  No, I'm willing to accept it if it is per

22    the agreement.  I think what the basic issue is here is there

23    is a lack of trust here.  And that's what it comes down to.  I

24    don't trust them any longer.  And so it is stated in the first

25    sentence, and I'm not an attorney, and I don't understand what

1    they might be trying to get from that last sentence, and that's

2    why I'm not comfortable with it.

3              MS. MISSAKIANN:  If you --

4              MS. GRACE:  Excuse me, I'm speaking.

5              I'm comfortable -- I'm comfortable with the first

6    sentence being in there, I think it's comprehensive and

7    addresses everything that they need.  And I understand it and

8    I'm comfortable with it.  But I'm not comfortable having it

9    stated again, because there is a lack of trust, and I think

10   they are asking for something that could be trapping me and I

11   don't want to be in that situation.

12             THE COURT:  It's not a trap.  They're saying it in a

13   redundant fashion, that you are not going to claim any interest

14   in the work or publication agreement, which you agree to.

15             MS. GRACE:  So strike it, it is redundant, let's move

16   on.

17             MS. MISSAKIANN:  The issue, your Honor, is with

18   respect to derivative work, to be quite specific.

19             THE COURT:  Okay, but why doesn't the prior sentence

20   take care of that?  And, trust me, if you are trying to write

21   something for the layperson, this settlement agreement is not

22   it.

23             MS. MISSAKIANN:  Well, unfortunately, it is not to the

24   layperson, because the contract, in and of itself, was broad

25   and overreaching itself.  So it had to be a little bite more

```
 1   specific.  There are --

 2             THE COURT:  Ms. Missakiann, you are missing my point.

 3             Read the prior sentence of paragraph 3.

 4             MS. MISSAKIANN:  Yes.

 5             THE COURT:  It says: Ms. Grace and LTM Books assigned,

 6   et cetera, et cetera, irrevocably, blah, blah, blah, all of

 7   their rights to the work or the publication agreement.

 8             MS. NOBLE:  I understand, your Honor.  There is also

 9   rights that -- there are also rights that Grace could have

10   exercised and controlled on her own that are derived from the

11   publishing agreement --

12             MS. GRACE:  No.

13             MS. NOBLE:  -- which she could have claimed sole

14   ownership of.  We don't know if she did that --

15             THE COURT:  I have no idea what you are talking about.

16   Obviously, this draft went out the first time without that

17   clause --

18             MS. GRACE:  I think what you need, Sandy, is an

19   assurance from me that I didn't license the rights, which is

20   acceptable.  And I will agree to that.  I did not license the

21   rights.  I'm happy to put that in.  And that will solve your

22   derivative -- the agreement itself -- the agreement itself

23   is -- the agreement itself is actually a standard agreement

24   used by two other very large book publishers.

25             THE COURT:  Okay.  So I take it we are going to
```

eliminate this last sentence, and put in a representation, if

it's not already here, that Ms. Grace did not license any right

to the work to anybody else.  I would also strongly suggest

that somebody carefully proofread.  And everywhere it says

"publishing agreement" refer to publication agreement.  As in

three lines from the bottom of paragraph 3.

             MR. NOBLE:  We'll do a global change, thank you, your

Honor.

             I thought the resolution on paragraph 3 was to take

out the "work."

             THE COURT:  No.  Come on, listen to your copyright

lawyer.

             The whole last sentence is going.  And in the reps and

warranties, there will be a rep and warranty that she hasn't

licensed or conveyed any rights.  That's what I thought I heard

Ms. Missakiann just agree to.

             MS. MISSAKIANN:  And also, your Honor, I didn't

necessarily agree to just that language.  She has the ability

to, also, under the agreement, create her own derivative work.

So it's not just a license.  It's also the creation of

derivative work.  And when we get to the xxx reps and

warranties, we can go through that but --

             THE COURT:  Here's the first thing we're gonna do.

And that is, all parties here on the 10:00?

             A VOICE:  Yes, your Honor.

```
 1              THE COURT:  Well, in four minutes, we'll take you.
 2              Okay.  So in paragraph 3, "publication," replaces
 3    "publishing."  The red language "without warranty" is in, the
 4    last sentence is out.
 5              We now go over to page 2.
 6              MR. NOBLE:  There three things happening in --
 7              THE COURT:  Well, let's take care of paragraph 5.
 8              MR. NOBLE:  We can take out that last insert, your
 9    Honor.
10              THE COURT:  Good.  Done.
11              MR. NOBLE:  Unless -- Sandy, unless I am screwing
12    something up.
13              MS. MISSAKIANN:  Nope.
14              MR. NOBLE:  On paragraph 6, there are three things
15    happening here.
16              THE COURT:  Yeah.
17              MR. NOBLE:  In paragraph C, third line down where it
18    talks about including, it's --
19              THE COURT:  Right.
20              MR. NOBLE:  Expands on what was there in terms of just
21    other words around it.
22              Second thing is paragraph D, where it talks about
23    converting rights.
24              THE COURT:  Now, I think there are problems in your
25    draft in here.
```

1          MR. NOBLE:  In the sentence that C, D, and E should

2     only relate to Grace?

3          THE COURT:  Well, you know --

4          MR. NOBLE:  Which is correct, your Honor.

5          THE COURT:  All right.  But you know, how many times

6     are we going to re-do this agreement.  This is supposed to be a

7     final --

8          MR. NOBLE:  Yeah, we're going to have a little

9     clean-up when we're done with this to reflect the changes, and

10    that will be it.

11         THE COURT:  Well, but you know between the transcript

12    and whatever -- look, as far as I'm concerned, fine, the Nobles

13    can --

14         MR. NOBLE:  She's not in a position to make those

15    reps.  Those are reps that --

16         THE COURT:  Okay, but you know, with all due respect,

17    you are the lawyer here.

18         MR. NOBLE:  I know.

19         THE COURT:  You have a copyright lawyer.  You have a

20    senior litigator accompanying you today.  And now you're

21    telling me that, yeah, I'm right, that this is lousily drafted.

22    Because it's making a rep on behalf of Ms. Noble that you say

23    she can't make.

24         Now, frankly, I don't care but --

25         MR. NOBLE:  Okay, good.

```
 1              But that's what my copyright lawyer has pointed out to
 2     me yesterday, quite frankly, that I --
 3              THE COURT:  Where has she been, or where have you been
 4     for last month?
 5              MR. NOBLE:  Your Honor --
 6              THE COURT:  Okay.  So, all right, any problem with --
 7     let's take it one by one.
 8              Any problem with paragraph A which says you can
 9     execute the agreement, Ms. Grace?
10              MS. GRACE:  None.
11              THE COURT:  Good.
12              B, they just took some extra language out; is that
13     okay?
14              MS. GRACE:  Yes.
15              THE COURT:  Good.
16              C, is what you just talked about, that you have not
17     licensed or whatever.  Is that acceptable.
18              MS. GRACE:  Correct, yes.
19              THE COURT:  D, which is --
20              MS. GRACE:  I don't --
21              THE COURT:  -- more of the same, that you haven't done
22     anything with the work that would deprive you of the right to
23     give it back to them, right, any problem with the language --
24              MS. GRACE:  I just need a minute to reread that.
25              THE COURT:  Yeah.
```

1          MS. GRACE:  Can you just tell me what this part about

2     "to their own possession or control or turned to account or

3     otherwise," what does that mean?

4          THE COURT:  Mr. Noble, or Ms. Missakiann, do you want

5     to explain it?

6          MS. MISSAKIANN:  Ms. Grace, where are you?

7          MS. GRACE:  Second line of paragraph D.

8          THE COURT:  Six D.

9          I also note 2 typos in the fourth line. I assume that

10    the word "no no," should be "now known."

11         MS. MISSAKIANN:  What this means, basically, is that

12    you were granted certain rights under the contract, that you

13    have not created any sort of -- "xxx turned to account"

14    essentially means that you -- you have received some sort of

15    consideration for the exercise of those rights and that this is

16    the representation that you have not done that.  And that you

17    have not exploited any of the rights that were granted to you,

18    by any means.  Because in this now known or hereafter devised

19    language tracks the language that is in your contract.

20         So much of this actually does track the language that

21    is in your contract.  So it is just a reiteration of what was

22    granted and now it's being -- you're representing that it did

23    not do it, using the same language.

24         That's what that whole paragraph basically does.

25         MS. GRACE:  If you change the first line to "they have

1   not converted any rights granted in the publishing agreement,"

2   I'm fine with the rest of it.

3            MS. MISSAKIANN:  It doesn't really make sense, the

4   rights are in the works.  The work is the --

5            MS. GRACE:  You can say "rights to the work in the

6   publishing agreement."

7            MS. MISSAKIANN:  There are no rights in the publishing

8   agreement.  The rights are in the work.

9            THE COURT:  Put that phrase after "the rights related

10  to the work."

11           MR. NOBLE:  Okay.

12           THE COURT:  Okay?  Good.

13           And E.  Any problem with that?

14           MS. GRACE:  Can you just distill this for me?  So it's

15  basically saying there are no legal actions against the work,

16  or the publishing agreement at this time.

17           Is that correct?

18           MS. MISSAKIANN:  And you have not pledged the work or

19  the publishing agreement as any collateral, there are no debts

20  against it, or liens against it, or anything that were the

21  rights that were conveyed to you under the publishing --

22           MS. GRACE:  That's fine.

23           THE COURT:  Okay.  Let's see if we can -- I think

24  we're almost done.

25           MS. MISSAKIANN:  Can I just ask you a question.  Are

```
 1    we separating these representations out?

 2              MR. NOBLE:  Yes.

 3              THE COURT:  Yes.

 4              MS. MISSAKIANN:  Okay.

 5              THE COURT:  So these will be Ms. Grace's

 6    representations.  And Ms. Noble's representation will be with

 7    respect to paragraphs A and B only.

 8              MS. MISSAKIANN:  Okay.

 9              THE COURT:  Right?

10              MR. NOBLE:  Right.

11              THE COURT:  Everyone agree?

12              MS. GRACE:  Yes.

13              THE COURT:  Okay.  Paragraph 7.

14              MR. NOBLE:  Next page, top of page 3.  I thought it

15    was clean-up.

16              MS. GRACE:  So just would like to put claimants

17    against.  It is just about divulging the information in the

18    agreement, so I would --

19              THE COURT:  I'm not sure who the claimants against

20    anybody are.  What does that mean?

21              MS. GRACE:  I'm going through a divorce.  If I need to

22    reveal this to --

23              MR. NOBLE:  I think you have that where it says as

24    otherwise required.

25              MS. GRACE:  But what if it's --
```

1              MR. NOBLE:  If you're legally required to show your

2     ex-husband, you are entitled to --

3              MS. GRACE:  If he requests it.  He is not an attorney,

4     right?

5              MR. NOBLE:  He is not an attorney.

6              THE COURT:  Why don't you make it specific.  Instead

7     of claimants against, put in a reference to Ms. Grace's husband

8     or ex-husband.

9              MR. NOBLE:  Is he current or ex right now?

10             MS. GRACE:  He is current.

11             THE COURT:  Okay.

12             MR. NOBLE:  All right.

13             On paragraph D, I took out that sentence because I was

14    not sure the Court had jurisdiction.

15             THE COURT:  The Court doesn't have jurisdiction.  So

16    once you have all finally approved and signed this, which it

17    looks like you now can, I only have to look at the short form

18    assignment.  Otherwise, I think we're done with the agreement.

19             I take it exhibit A is going to be the underlying

20    publication agreement?

21             MR. NOBLE:  Right.

22             THE COURT:  Okay.

23             MR. NOBLE:  Correct.

24             THE COURT:  Okay.  So short form assignment.

25             Okay paragraph 1, there are two changes.

```
 1              MR. NOBLE:  I thought that was clean-up.  And refers
 2    to the publishing agreement.
 3              MS. GRACE:  I had wanted to delete paragraph 2.
 4              THE COURT:  All right.
 5              Well, let's stick with paragraph 1 for a minute.  Is
 6    there any problem?
 7              MS. GRACE:  No.
 8              THE COURT:  There is language added by the plaintiff
 9    side, and something taken out.
10              MS. GRACE:  I'm not sure why, to the extent versus as
11    more particularly, I'm not quite sure why it would be changed
12    or what the difference is.
13              MR. NOBLE:  We can live with.  It's fine.
14              THE COURT:  Okay.  So it will be to the extent set
15    forth.
16              Okay, paragraph 2.
17              MR. NOBLE:  Your Honor, this was an important point
18    for us.  If we have to defend the work or publication agreement
19    later, so we need to be able to step in as a power of attorney.
20              MS. MISSAKIANN:  One additional note, your Honor.
21              THE COURT:  Hang on, hang on, hang on.
22              All right.  Well, it does seem that if you want to do
23    this, it is at your expense.
24              MR. NOBLE:  Correct.
25              THE COURT:  Okay.  But it doesn't say that.  That
```

1    seemed to be Ms. Grace's objection.

2              MR. NOBLE:  So on the fifth line down, after the

3    colon, you can put "at Noble' expense."

4              MS. GRACE:  If you could just add a phrase saying

5    that, indemnifying me for the costs, that I am not in any way

6    responsible for the costs of such action, I would be

7    comfortable with that.

8              MS. MISSAKIANN:  If we are going to address

9    indemnification, I would like all the reps and warranties to be

10   indemnifiable.

11             THE COURT:  We're not rewriting the agreement.  If you

12   didn't put it in before, it isn't coming in now.

13             MR. NOBLE:  Your Honor, I'm happy --

14             THE COURT:  In addition, with this paragraph, you can

15   do it one of two ways.

16             If you have to bring any suit, it is presumably

17   because Ms. Grace violated her agreement, otherwise she has no

18   rights and you wouldn't need her.  So this is redundant.  So if

19   you want your redundancy to be able to sue somebody in her name

20   or her company name, then just put in the, you know, "at

21   Noble's expense," and with full indemnity of Noble, by Noble of

22   Ms. Grace.  Or you leave it out.  It seems very simple.

23             MS. GRACE:  You know, it seems to me that once we sign

24   this agreement, I don't have any rights.  So if they find

25   themselves in a lawsuit, I don't know why I would be involved.

1          MS. MISSAKIANN:  This language just --

2          MS. GRACE:  But, again, I'm fine with it, if they want

3     to add that bit about the costs.

4          MS. MISSAKIANN:  This will be at Noble's expense.  And

5     so that's not an issue.  We do need the ability to have the

6     assignable, this right assignable, if the rights are

7     assignable, which I believe they are.  And, you know, this is

8     going to be, your Honor, and why this is in here, is that we're

9     going to have to assign and represent the exact same things

10    sometime in the future to third parties, so we are just

11    tracking language that we're going to have to agree to

12    ourselves. So we're going to have to --

13         THE COURT:  I don't really understand how -- and you

14    have, in the six redundancies in the settlement agreement, made

15    it clear that Ms. Grace has zero rights in the work or the

16    prior publication agreement, that she has represented and

17    thereby breached the agreement if she has transferred any

18    rights previously, I'm not sure why you need this.

19         MS. MISSAKIANN:  I appreciate that.  However, there

20    is, and has been, instances where people make representations

21    that they have not done something but, in fact, there is an

22    unknown third party who has been a licensee of rights who,

23    unknowingly, starts to exploit them.  And to the extent that

24    this becomes an issue we have to be able to stand in her place,

25    yes, we would have a breach of contract suit against her, of

1    course, but that's not --

2            THE COURT:  In any event, since this is not an

3    academic exercise, but just getting you all to settle, put in

4    an extra sentence at the beginning or the end that the exercise

5    of these rights will be solely at Noble's expense, with full

6    indemnification of Ms. Grace and LTM.

7            And that appears to satisfy Ms. Grace, yes?

8            MS. GRACE:  That's fine.

9            MR. NOBLE:  Your Honor, I think that's fine.  When we

10   talk about the indemnity, it should be subject to offset.  If

11   she has breached the agreement, it should be the only basis.  I

12   don't want to write her a check and try to collect something

13   back from her.

14           THE COURT:  If you are bringing the suit, bringing it

15   in her name, you are paying for it.

16           MR. NOBLE:  Yeah, which is fine.  I don't want to

17   indemnify her for the costs when she owes me, based on a

18   breach.

19           THE COURT:  Then you don't need paragraph 2.  You

20   can't do it both ways at the same time.

21           MS. GRACE:  No.

22           THE COURT:  You really can't.  You can't be her for

23   purposes of suing somebody else, and then say --

24           MR. NOBLE:  Okay.

25           THE COURT:  -- even though I have agreed that I'm

```
 1    doing that at my expense --
 2              MR. NOBLE:  Okay, your Honor.
 3              THE COURT:  -- I'm going to charge her for it.
 4              MR. NOBLE:  Okay.
 5              THE COURT:  Just doesn't work.
 6         Good.
 7              MR. NOBLE:  All right.  And can we --
 8              THE COURT:  And can we all figure out which way
 9    Ms. Grace's name is spelled, so you can wrap that up.  And I
10    assume she knows better than you how her name is spelled?
11              MR. NOBLE:  That's my assumption.
12              THE COURT:  Okay.  Good.  I'm going to require the
13    lawyer in the room, that is to say Mr. Noble -- or a lawyer --
14    to purchase the transcript, from the court reporter.
15              And with that, we are done.  Get a clean copy that
16    should conform exactly to what we have just done here.  And if
17    there is any doubt, the transcript makes it clear.  And I am
18    ordering the plaintiff's side to purchase the transcript and
19    give a free copy to Ms. Grace.
20              ALL:  Thank you, your Honor.
21              THE COURT:  Unless there is anything else, we're
22    adjourned on this case.
23              MS. GRACE:  Thank you, your Honor.
24              MS. MISSAKIANN:  Thank you.
25
```